S. AMANDA MARSHALL, OSB # 95347
United States Attorney
District of Oregon
SEAN B. HOAR, OSB #87254
Assistant United States Attorney
Sean.Hoar@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204
Telephone:  (503) 727-1000
Facsimile:   (503) 727-1117

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 0979 3:13CR00064-001-HZ |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| CYRUS ANDREW SULLIVAN, | Sentencing Date: July 8, 2013 at 3:00 p.m. |
| Defendant. | |

The United States of America, by and through its attorneys, S. Amanda Marshall, United States Attorney for the District of Oregon, and Sean B. Hoar, Assistant United States Attorney, submits this memorandum for the benefit of the Court and the parties in preparation for the sentencing hearing in this case.  The sentencing hearing is scheduled to occur at 3:00 p.m. on Monday, July 8, 2013.  In the plea agreement which resolved this matter, the parties agreed to litigate the determination of the relevant factors under 18 U.S.C. § 3553(a) and the applicable advisory guideline range under the United States Sentencing Guidelines.  The factual background of the offense, defendant's criminal history, and the sentencing recommendations of the United States are set forth below.

**The Factual Background**

The presentence report (PSR) appears to have accurately set forth the underlying facts in the case. The offense stems from an online business model created by defendant which involved websites to which malicious content was posted about people who were informed they had to pay fees through a "reputation management service" to have the information removed. PSR ¶ 10. One of defendant's victims, A.K. from Portland, Oregon, continued to demand that defendant remove false and malicious information which was posted about her on the website www.stdcarriers.com. When defendant refused to remove the information, she fought back. She aggregated publicly available information about defendant and posted it online for other people, including other victims, to see. When defendant realized what she had done, he threatened to kill her. That threat spurred the Portland Police Bureau (PPB) to take action as they believed that defendant would carry out the threat.

On June 7, 2012, defendant was arrested by the PPB for coercion, identity theft, and computer crime. PSR ¶ 21. On June 8, 2012, Multnomah County Circuit Judge Jean Kerr Maurer ordered that he be detained on $1,000,000 bail due to the danger he posed to the community and to his victims and, should he be released, to insure his appearance on the charges pending in Multnomah County Circuit Court. On June 11, 2012, defendant was indicted by a Multnomah County grand jury for two counts of coercion, two counts of computer crime, and one count of identity theft. This case was later adopted federally and became the current case.

As set forth in the PSR, over a period of time a number of email messages were exchanged between defendant and A.K. At some point the messages from defendant became threatening. On June 4, 2012, after confirming that A.K. had posted information online about him, he sent a message to her which included a the following volatile statements:

GOVERNMENT'S SENTENCING MEMORANDUM                                      PAGE 2 -

> ". . . You have been declared an enemy of the company . . . If you fuck with me further I will report you to the police for stalking. If the police do nothing I will do all that is physically necessary to prevent you from being capable of ever stalking anyone else. You've fucked with the wrong person and your husband better hope that I never figure out his name or I will own his ass too. . ."

PSR ¶ 18. At 05:06 a.m. on June 4, 2012, defendant sent the following message from the email address webmaster@stdcarriers.com to an email address belonging to A.K.:

> "…You have me angry at you and that is worse than thousands of people, especially if you have a daughter like your troll forum post claimed because you don't want her to witness what will happen to you if you or anyone else publishes that information again (see last email). You had better be very afraid because I am more cold and calculating than you. I am more cold and calculating than you because even though I am not a communist, like them I have no regard for human life other than my own. Cut your losses before you end up looking back and wishing that you had taken my warning seriously."

That afternoon, at 2:46 p.m., defendant sent the following message from the email address webmaster@stdcarriers.com to an email address belonging to A.K.:

> "You just don't learn your lessons do you? Now I have no choice but to come to your house armed and put an end to you once and for all. The only way you can stop this is by removing your stalker site and paying me $10,000. You don't have a choice."

That evening, at 6:19 p.m., defendant sent the following message from the email address webmaster@stdcarriers.com to an email address belonging to A.K.:

"You have 24 hours to comply with my demands or I will be paying you a visit and although I will not hurt you physically unless you threaten me first I promise that my visit will not be pleasant for you."

PSR ¶ 19.

On June 5, 2012, at 4:57 a.m., a person identifying himself as defendant left a voice mail on the work telephone of Geoffrey Darling, Chief Investigator with the Oregon Department of Justice, Consumer Protection Section. Darling had been communicating with A.K. and defendant regarding the websites defendant controlled and information posted on them regarding A.K. A transcript of the call is as follows:

"Recorded voice: To listen to your new messages, press two. To listen to your . . . Hi Geoff, this is Cyrus Sullivan. You probably remember me from running that website. Well, it turns out, um, you were impatient with me, but it turns out that I was right and that (A.K.) is my stalker. I've cc'd you on multiple emails over the past twenty-four or forty-eight hours regarding her activities in which I caught her dead, red-handed, anyway. Uh, um, based on meta data, on data she submitted, she submitted to me anyway. And uh, well, I'm asking for your help here because (laughs) you're the only person that can prevent her from suffering the ultimate consequences it appears. I have some events in motion that are going to eliminate her as a threat to my company. And those events will kill her if she doesn't stop it. Uh, you know the website that I referred to where her, uh, she basically stalked my family. She changed it. I told her that I was not gonna tolerate her uh, stalking and uh, well, I told her that if she put any more information up she was gonna die. And I put events in motion that will kill her within the next twenty-four hours. You best tell her, tell her to knock it off because I finally got confirmation from (J.G.) that he

actually was responsible for what took place but I cannot allow anyone to believe that they can um, you know, attack my family members just to screw up my business. So, unless she is put in handcuffs or she agrees to capitulate within the next twenty-four hours, she is gonna die. And if you screw with me on this with the police or anything, you're gonna be targeted by my new uh, anti-government targeting system, which you know about an alert list slash government, slash law enforcement. Okay? So, you better get on the phone with her and tell her to get in line because I'm on her, on her side because of what he did but if she keeps doing what she's doing, she's gonna be dead within the next twenty-four hours. So I trust you to do the right thing. Thank you. Bye."

Plea Agreement, ¶ 5; PSR ¶¶ 20, 25.

On July 6, 2012, a release hearing was held for defendant before Multnomah County Circuit Court Judge Kelly Skye. The victim of the offense, A.K., was present during the hearing. During the hearing defendant was polite and articulate. At the end of the hearing, Judge Skye denied defendant's motion to reduce his bail. After Judge Skye denied defendant's motion, defendant formed his hand into the shape of a gun, pointed it at A.K., and pulled the trigger. Judge Skye then directed defendant to control himself to which he responded "I am coming after your next, you fucking bitch." PSR ¶¶ 22, 25.

## Defendant's Criminal History Category

Defendant was first convicted in 2003 of two counts of criminal mischief in the second degree in Benton County Circuit Court in Corvallis, Oregon, Case Number V0300068. The offenses occurred when he was 20 years old. The convictions stemmed from an incident while defendant was a student at Oregon State University. He was intoxicated and had recently been disassociated from the Tau Kappa Epsilon fraternity when he broke three windows in the fraternity

GOVERNMENT'S SENTENCING MEMORANDUM                                   PAGE 5 -

house with various items and shattered a car windshield with a brick. He was sentenced on August 29, 2003 to pay a $295 fine. PSR ¶ 40.

Following this incident, defendant transferred to Portland State University. He was next convicted in 2004 of two counts of assaulting a public safety officer in Multnomah County Circuit Court in Portland, Oregon, Case Number 03-10-35094. The offenses occurred in October of 2003 when defendant was 20 years old. These convictions resulted from defendant's refusal to leave a facility at Portland State University in which he was publicly drinking. When asked by another person to pour out beer he was drinking because it was against the rules, defendant yelled "Fuck you faggot!" and hit the person in the arm. The person then began to call the Campus Public Safety Office when defendant knocked the phone from his hand, causing the phone to hit the floor and break into pieces. Defendant then threw a beer can at the person and yelled "Fuck you faggot!" Defendant then left the lobby and when contacted by public safety officers about the incident, he began fighting with them, threatening to kill them. The fight involved a violent struggle with several officers, requiring defendant to be tazed twice in order to be subdued. He was sentenced on February 27, 2004 to a 36 month term of probation. PSR ¶ 41.

Defendant was next convicted of harassment in Benton County Circuit Court in Corvallis, Oregon, Case Number CM0520478. The offense occurred in April of 2005 when defendant was 21 years old. This conviction stemmed from actions against a former Tau Kappa Epsilon fraternity brother. Defendant was angry with the former fraternity brother whom he believed was promoting the hazing of a pledge class. He used information he obtained from the former fraternity brother's Instant Messenger account to create a forged Criminal Sexual Offender Release Notification which included the former fraternity brother's photograph and personal information, and alleged that the former fraternity brother was a predatory sex offender. He sent

the notification, which included flyers, throughout the sorority system at Oregon State University. Defendant was sentenced on August 25, 2005 to serve ten days in jail.   PSR ¶ 42.

After this conviction, defendant transferred from Portland State University to the University of Oregon in Eugene, Oregon.   While a student there he was involved in a series of incidents stemming from his inappropriate behavior.   He was subsequently convicted of recklessly endangering another person in Lane County Circuit Court in Eugene, Oregon, Case Number 20-07-13499.   The offense occurred in June of 2007 when defendant was 23 years old. The conviction arose from a pop bottle bomb making incident.   Defendant was sentenced on November 13, 2007 to an 18 month term of probation.   PSR ¶ 43.

Defendant was next convicted of recklessly endangering another person in Multnomah County Circuit Court Case Number C10-03-43325.   The offense occurred in March of 2010 when defendant was 26 years old.   This conviction arose from an incident at the Dancin Bare Bar in Portland, Oregon.   During that incident, employees told defendant to not use his cell phone in the establishment, and they refused to serve him because he was highly intoxicated.   He became belligerent and began drinking from the pitchers and glasses of other patrons.   When told to leave, he refused.   When a bouncer tried to take a glass of beer from him, defendant threw the glass toward a bartender.   It hit a flat screen television, cracking its plastic covering.   When employees grabbed him in an effort to escort him out of the bar, he reached for a knife in his pocket. Employees were able to take the knife, which had a blade of approximately three inches, before defendant was able to open it all the way.   Defendant was sentenced on February 15, 2013 to a four month term in jail, followed by a 36 month term of probation.   PSR ¶ 44.

Pursuant to U.S.S.G. § 4A1.1, defendant's prior convictions appear to merit six (6) points. PSR ¶ 45.   Six (6) points would place him in Criminal History Category III.   PSR ¶ 46.

**Applicable Advisory Sentencing Guideline Range**

The PSR appears to have accurately calculated the applicable advisory sentencing guideline provisions. The United States supports the recommendations contained in the PSR and recommends that the Court apply the following guideline provisions:

**Base Offense Level**: Pursuant to U.S.S.G. § 2A6.1(a), the base offense level is 12 because the offense of conviction is making a threatening communication in violation of 18 U.S.C. § 875(c). PSR ¶ 28.

**Conduct evidencing threat**: Under U.S.S.G. § 2A6.1(b)(1), if the offense involved any conduct evidencing an intent to carry out the threat, the offense level is to be increased six (6) levels. Application Note 1 to U.S.S.G. § 2A6.1 provides that in determining the application of § 2A6.1(b)(1), the court shall consider both conduct that occurred prior to the offense and conduct that occurred during the offense. With regard to conduct that occurred prior to the offense, it must be substantially and directly connected to the offense. U.S.S.G. § 2A6.1, comment. (n.1). As set forth in the PSR, on June 4, 2012, defendant sent multiple threatening email messages to the victim of the offense. Two of these email messages preceded the threatening email message which is the subject of the count of conviction. Each of these messages was substantially and directly related to the threatening email message which is the subject of the count of conviction. The following morning, he left a recorded voicemail message for the Chief Investigator at the Oregon Department of Justice, Consumer Protection Section, stating that he had put events in motion that would kill the victim within 24 hours. This message was also substantially and directly related to the threatening email message which is the subject of the count of conviction. Pursuant to U.S.S.G. § 2A6.1(b)(1), the United States will recommend that the offense level be increased six

(6) levels because the number and nature of the messages evidence an intent to carry out the threat. Plea Agreement, ¶ 5; PSR ¶¶ 18-20, 29.

**Multiple threats**:   Under U.S.S.G. § 2A6.1(b)(2)(A), if the offense involved more than two threats, the offense level is to be increased two (2) levels.   As set forth above, on June 4, 2012, defendant sent the victim four separate threatening email messages.   The following morning he reiterated his threats in a voicemail message for the Chief Investigator at the Oregon Department of Justice, Consumer Protection Section.   Pursuant to U.S.S.G. § 2A6.1(b)(2)(A), the United States will recommend that the offense level be increased two (2) levels because the offense involved more than two threats.   Plea Agreement, ¶ 5; PSR ¶¶ 18-20, 30.

**Obstruction of justice**:   Under U.S.S.G. § 3C1.1, if defendant engaged in or attempted to engage in obstructive conduct, the offense level is to be increased two (2) levels.   Section 3C1.1 provides the following:

> "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels."

Application Note 4 to U.S.S.G. § 3C1.1 sets forth examples of obstructive conduct to which the section applies.   It provides that "threatening, intimidating, or otherwise unlawfully influencing a . . . witness, directly or indirectly, or attempting to do so," is an example of obstructive conduct to which the section applies.   U.S.S.G. § 3C1.1, comment. (n.4).

As set forth in the PSR, defendant made multiple email threats to the victim, followed by a voicemail threat to the Chief Investigator for the Oregon Department of Justice, Consumer

Protection Section. During that voicemail message, defendant threatened the Chief Investigator by stating "… if you screw with me on this with the police or anything, you're gonna be targeted by my new uh, anti-government targeting system …" Plea Agreement ¶ 5; PSR ¶ 25. On July 6, 2012, prior to the adoption of the instant case for federal prosecution, while charges were pending for the same conduct in Multnomah County Circuit Court, a release hearing was held before Multnomah County Circuit Court Judge Kelly Skye. Defendant's bail had been set at $1,000,000 and he had filed a motion to reduce the bail. The victim of the offense, A.K., testified at that hearing. At the end of the hearing, Judge Skye denied defendant's motion to reduce his bail. Defendant then threatened both the victim of the offense, A.K., and Judge Skye. PSR ¶ 22. Pursuant to U.S.S.G. § 3C1.1, the United States will recommend that defendant's offense level be increased two (2) levels because his actions constituted an attempt to obstruct or impede the administration of justice. PSR ¶¶ 20, 22, 25, 33. This should result in an Adjusted Offense Level of 22.

**Acceptance of responsibility**: Pursuant to U.S.S.G. § 3E1.1(a) and (b), the offense level should be reduced three (3) levels for defendant's acceptance of responsibility. This should result in a Total Offense Level of 19.

### Sentencing Recommendation

According to the presentence report, defendant falls within Criminal History Category III. When combined with a Total Offense Level of 19, it results in an applicable advisory sentencing guideline range of 37 to 46 months. Considering defendant's prior criminal history, including his increasingly violent acts, the nature of the offense of conviction, and defendant's relevant conduct, the United States recommends that defendant be sentenced at the high end of the applicable

advisory guideline range, a 46 month term of imprisonment. The United States also recommends that the prison term be followed by a three (3) year term of supervised release which includes standard conditions 1-18 and special conditions 1-11 as referenced in the PSR Sentencing Recommendation.

Respectfully submitted this 1st day of July, 2013.

                                                S. AMANDA MARSHALL
                                                United States Attorney
                                                for the District of Oregon

                                                /s/ Sean B. Hoar
                                                SEAN B. HOAR
                                                Assistant United States Attorney