IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

CYRUS ANDREW SULLIVAN,

          Defendant.

No. 3:13-cr-00064-HZ
(3:15-cv-01082-HZ)


OPINION & ORDER

Billy J. Williams
ACTING UNITED STATES ATTORNEY
District of Oregon
Johnathan S. Haub
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

      Attorney for the United States

Cyrus Andrew Sullivan
74918-065, USP Victorville
P.O. BOX 3900
Adelanto, CA 92301

      Defendant Pro Se

1 - OPINION & ORDER

HERNANDEZ, District Judge:

On April 15, 2013, Defendant pleaded guilty to a Superseding Information charging him with one count of Making a Threatening Communication in violation of 18 U.S.C. § 875(c). He was sentenced on July 18, 2013. A Judgment of Conviction was filed on July 19, 2013.

Defendant now moves to vacate or correct his sentence under 28 U.S.C. § 2255. In connection with the motion, he requests an evidentiary hearing and appointment of counsel. Although Defendant did not initially receive the Government's briefing or some of the exhibits, Defendant has now received all material filed by the Government in response to his motion. He has filed two replies to the Government's response which I have considered.[1]

For the reasons explained below, the motion and record in the case conclusively show that Defendant is entitled to no relief. Thus, I deny Defendant's motion as well as his requests for an evidentiary hearing and appointment of counsel.

I. Arguments Not Considered

In his ninety-six page motion, Defendant raises eleven separate arguments for relief. Additionally, he recites several "Aggravating Truths" in support of his arguments generally and to support his request for re-sentencing at the bottom of the Sentencing Guidelines.

In his Plea Agreement, Defendant expressly "waive[d] the right to file any collateral attack, including a motion under 28 U.S.C. § 2255, challenging any aspect of the conviction or

---

[1] Defendant also raises conditions of confinement issues in his replies. I do not consider them because a Section 2255 motion is not the proper vehicle by which to raise these claims. 28 U.S.C. § 2255 (allowing action to challenge the legality of the sentence); United States v. Giddings, 740 F.2d 770, 772 (9th Cir. 1984) (Section 2255 tests only the propriety of the sentence imposed, not the manner of execution; however, review of the execution of a sentence may be had through petition for a writ of habeas corpus under 28 U.S.C. § 2241)

sentence on any grounds, except on grounds of ineffective assistance of counsel, and except as provided in Fed. R. Crim. P. 33 and 18 U.S.C. § 3582(c)(2)." ECF 45 /Attach. 5 to Gov't Resp. to Def.'s 2255 Mtn. (hereinafter "Gov't Resp.") at 4. During the plea hearing, Defendant confirmed, under oath, that he had read the Plea Agreement, understood it, and reviewed it with his lawyer. ECF 63/Attach. 7 to Gov't Resp. at 6-7. He stated he had no problems understanding anything in the document. Id. at 7. He also expressly acknowledged that he was waiving his right to appeal except for limited exceptions, as recited in Paragraph 12 of the Plea Agreement. Id. at 23. As the transcript of the plea hearing establishes, I spent considerable time confirming Defendant's understanding and consequences of his plea. Id. And, despite the numerous arguments Defendant raises in support of his motion, he has not attacked the validity of his waiver of his right to collaterally attack his conviction and sentence. There are no facts upon which to find that Defendant's waiver was uninformed or otherwise defective.

A plea agreement may waive a defendant's right to bring a section 2255 motion if it does so expressly. Lemke v. Ryan, 719 F.3d 1093, 1096 (9th Cir. 2013), cert. denied, 134 S. Ct. 1303 (2014); United States v. Abarca, 985 F.3d 1012, 1014 (9th Cir. 1993). Defendant expressly waived his right to make a 2255 motion in his Plea Agreement, subject to certain exceptions, one of which is a claim of ineffective assistance of counsel.[2]

Of the eleven separate grounds Defendant raises in support of his motion, only four are based on ineffective assistance of counsel. The others are: (1) Ground for Relief 4 - seeking a departure or variance in order to avoid a sentence longer than the "total length of consecutive

---

[2] The other two exceptions to the waiver under Federal Rule of Criminal Procedure P. 33 and 18 U.S.C. § 3582(c)(2), do not apply here.

3 - OPINION & ORDER

sentences" imposed in the instant case and a subsequent assault case; Def.'s Mtn. at 62-67; (2)

Ground for Relief 6 - actual innocence; Id. at 74-75; (3) Ground for Relief 7 - plea not voluntary,

knowing, or intelligent; Id. at 75; (4) Ground for Relief 8 - lack of jurisdiction; Id.; (5) Ground

for Relief 9 - selective prosecution; Id. at 75-76; (6) Ground for Relief 10 - prosecutorial

misconduct; Id. at 76-78; and (7) Ground for Relief 11 - denial of due process; Id. at 78-79.

Given the breadth of Defendant's valid waiver (agreeing to waive the right to file any

collateral attack "challenging any aspect of the conviction or sentence on any grounds," ECF

45/Attach. 5 to Gov't Resp. at 4 (emphasis added)), only the ineffective assistance of counsel

claims are properly before this Court.  Edwards v. United States, No. F-06-CR-49 LJO, 2011 WL

3273153, at *5 (E.D. Cal. July 28, 2011) (waiver of right to collaterally attack sentence precluded

defendant from raising arguments unrelated to the performance of counsel or voluntariness of

waiver); United States v. Fernandez, No. Cr. S-04-139 DFL, 2007 WL 1747484, at *1 (E.D. Cal.

June 18, 2007) (valid section 2255 waiver barred argument based on actual innocence) (citing

United States v. Corez-Arias, 425 F.3d 547, 548 (9th Cir. 2005); United States v. Abarca, 985

F.2d 1012, 1014 (9th Cir. 1993)); United States v. Battle, No. CR 02-399-1-JO, 2007 WL

3341740, at *1 (D. Or. Nov. 9, 2007) (valid waiver of collateral attack under section 2255

precluded defendant from raising constitutional challenge to sentence implicating Fifth and Sixth

Amendment rights; court considered only ineffective assistance claim).

II.  Ineffective Assistance of Counsel

Defendant argues that both trial counsel and appellate counsel were ineffective.  As to

appellate counsel, I reject the argument because Defendant, as noted above, expressly waived his

right to appeal and cannot now be heard to argue that his appellate counsel, Bronson James, was

ineffective.  Moreover, none of the discussion provided by Defendant regarding James's conduct supports a conclusion that James's performance was ineffective.  Additionally, to the extent Defendant contends that his trial attorney Per Olson was ineffective for withdrawing from his representation of Defendant and not filing a notice of appeal, the argument is without merit. Again, there was an express waiver of the right to appeal and Plaintiff obtained counsel for his appeal in any event.

As to trial counsel, none of the expressly delineated "Grounds" is directed at Plaintiff's first trial attorney Thomas Price.  But, in the "Aggravating Truths" section of his motion, under a section entitled "Aggravating Truth 3: Liars and Quitters," Defendant contends that he and Price had a disagreement about shutting down Defendant's websites.  Def.'s Mtn. at 82-88.  He argues that Price's conduct caused his websites to be shut down and that this has prejudiced him because a sentencing judge will impose a more severe sentence in the belief that the sites will be shut down longer.  I reject the arguments made against Price.  First, the arguments are not made as part of a specific ineffective assistance claim.  Second, even if the arguments were delineated as such a claim, Price represented Defendant for only two months at the beginning of the case and did not represent him at the plea or sentencing.  Third, the argument about continuing prejudice at sentencing is purely speculative and without foundation.

The bulk of Defendant's motion is addressed to Olson's conduct at the plea and sentencing.  Olson began representing Defendant after Price withdrew in August 2012.  Olson continued to represent Defendant through plea negotiations, at the plea hearing, and at sentencing.

/ / /

5 - OPINION & ORDER

A.  Standards for Ineffective Assistance of Counsel Claims

Courts use a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel.  Premo v. Moore, 562 U.S. 115, 121 (2011).  Under this test, a defendant must prove that counsel's assistance was deficient and that the deficient performance prejudiced the defense.  Id.; see also Schurz v. Ryan, 730 F.3d 812, 815 (9th Cir. 2013) (Defendant must show not only that counsel's performance was deficient but that the deficient performance prejudiced the defendant).

To prove the deficiency of counsel's performance, the defendant must show counsel made errors so serious that his "'representation fell below an objective standard of reasonableness'" under prevailing professional norms.  Stanley v. Cullen, 633 F.3d 852, 862 (9th Cir. 2011) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)).  The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance.  Strickland, 466 U.S. at 688.

In assessing whether counsel's performance was deficient, courts must "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"  Hibbler v. Benedetti, 693 F.3d 1140, 1149 (9th Cir. 2012) (quoting Strickland, 466 U.S. at 689).  Ultimately the defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"  Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687).

"To satisfy the prejudice prong under Strickland, a defendant must show 'a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Saesee v. McDonald, 725 F.3d 1045, 1048 (9th Cir. 2013) (quoting Strickland, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Saesee, 725 F.3d at 1048 (quoting Strickland, 466 U.S. at 695).

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]" Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id.

B. Facts Regarding the Plea Phase

In June 2012, Defendant was charged in a Criminal Complaint with Threatening Communications and Internet Stalking in violation of 18 U.S.C. §§ 875(c), 2161A(2)(A). ECF 1. As noted above, Price was initially appointed to represent Defendant. On August 29, 2012, Olson was appointed in Price's place. ECF 10. In his Declaration, Olson recites that several months after his initial representation appointment, Magistrate Judge Coffin conducted a settlement conference in an effort to settle both state and federal pending charges against Defendant. Attach. 1 to Gov't Resp. at 1 (Filed Under Seal). At that time, in January 2013, the charging instrument was still the Criminal Complaint. Id. Defendant was facing state charges which arose out of the same factual transactions that were at issue in the federal Criminal Complaint. Id. Participants in the settlement conference included the local District Attorney and Defendant's state court-appointed counsel. Id.

Before the settlement conference, Olson states that he discussed "at length the element of intent" and his and Defendant's "strategy to rebutting the government's evidence of intent with

our own evidence of the defendant's diminished capacity that limited his ability to form specific intent." Id. at 2. Olson told Defendant that "with respect to any potential crimes the government could allege - including Section 875(c) - it would have to prove he actually intended to convey a threat to the complainant, not just that she reasonably perceived it that way." Id.  At least one of the emails to the victim was facially threatening. Id. Olson states that given "the threatening nature of the emails themselves, Mr. Sullivan and I discussed the need to introduce evidence of his mental condition, including PTSD and Asperger's Disorder, to explain his state of mind and rebut the government's evidence of a specific intent to threaten." Id.

Olson wrote a Settlement Memorandum to Judge Coffin, dated January 14, 2013, which was sent to Defendant before the January 17, 2013 settlement conference. Id. at 2-3; see also Ex. B to Olson Decl. (January 15, 2013 Letter to Defendant indicating that Olson's Settlement Memorandum to Judge Coffin was enclosed). At page 8 of the January 13, 2013 letter to Judge Coffin, Olson told Judge Coffin that the Government was seeking to indict Defendant with the more serious crime of Making an Extortionate Threatening Communication under 18 U.S.C. § 875(b), although the original Criminal Complaint had charged him with the lesser offense under Section 875(c). Ex. A to Olson Decl. at 7-8. Olson then wrote:

> It's no secret that the defense to either count will center on the issue of defendant's intent. The crimes defined by Section 875 are "specific intent" crimes. United States v. Twine, 853 F.2d 676, 679-80 (9th Cir. 1988). Therefore, the government must prove that defendant acted with the purpose to cause the prohibited result. United States v. Bailey, 444 U.S. 394, 405 (1980). In terms of a Section 875(c) violation, the government must prove that defendant intended his statement to be perceived as a threat. See Twine, 853 F.2d at 679-80.

Id. In the next two paragraphs, Olson explained to Judge Coffin that "[b]ecause these offenses are specific intent crimes, defendant has multiple defenses involving his mental and emotional

condition." Id. at 8.  Olson states in his Declaration that as of the time of the settlement

conference, "[t]here is no question in my mind that Mr. Sullivan was aware of the government's

burden to prove he subjectively intended to threaten the complainant."  Olson Decl. at 3.

The settlement conference was unsuccessful.  On February 13, 2013, Defendant was

indicted on a charge of Making an Extortionate Communication and Internet Stalking in

violation of 18 U.S.C. § 875(b), and Internet Stalking in violation of 18 U.S.C. §§ 2261A(2)(A),

2261(b)(5).

On April 9, 2013, as a result of plea negotiations, Defendant was charged in a

Superseding Information with one count of Making a Threatening Communication in violation of

18 U.S.C. § 875(c).  ECF 40/Attach. 4 to Gov't Resp.  There, the United States Attorney charged:

> On or about June 4, 2012, in the District of Oregon, defendant Cyrus Andrew
> Sullivan knowingly transmitted and caused to be transmitted in interstate or
> foreign commerce a communication containing a threat to injure the person of
> another, to wit, an email communication via the Internet containing a threat to kill
> another person, A.K., which a reasonable person would take as a serious
> expression of an intention to inflict bodily harm upon A.K.  All in violation of
> Title 18, United States Code, Section 875(c).

Id.

On April 12, 2013, Assistant United States Attorney Sean Hoar sent Olson a proposed

Plea Agreement which Defendant signed on April 15, 2013.  ECF 45/Attach. 5 to Gov't Resp.

On April 15, 2013, Defendant appeared in Court at a plea hearing where he waived prosecution

by indictment and agreed to proceed on the Superseding Information.  ECF 63/Attach. 7 to Gov't

Resp. at 3-4; see also ECF 44 (signed waiver of indictment).  Olson states that he mailed a copy

of the Plea Agreement to Defendant on April 12, 2013.  Olson Decl./Attach. 1 to Gov't Resp. at

3.  He met with Defendant in the U.S. Marshal's lock-up for one hour before the plea hearing,

which Olson believed was sufficient time to go over the Plea Agreement with Defendant to make sure he understood its terms. Id. At the plea hearing, Defendant acknowledged that he had carefully reviewed every part of the Plea Agreement with counsel, that he understood and voluntarily agreed to its terms, that he signed it, and that he was pleading guilty because he was, in fact, guilty. ECF 63/Attach. 7 to Gov't Resp. at 25; see also id. at 9 (Defendant agreeing he was able to discuss the case adequately with counsel, was able to understand what counsel was trying to explain to him, and had no difficulty understanding the Plea Agreement).

The Plea Agreement states that Defendant agreed to waive indictment and plead guilty to the Information charging him with Making a Threatening Communication in violation of 18 U.S.C. § 875(c). ECF 45/Attach. 5 to Gov't Resp. at 1. The Plea Agreement recited the elements of the crime as follows:

> a. First, on or about June 4, 2012, in the District of Oregon, defendant knowingly caused a transmission in interstate or foreign commerce: an email communication via the Internet;
>
> b. Second, the transmission was a communication containing a threat to injure another person, which a reasonable person would take as a serious expression of an intention to inflict bodily harm upon that person;
>
> c. Third, defendant caused the transmission with the intent to threaten the other person[.]

Id.

In Paragraph 5 of the Plea Agreement, addressing Facts/Relevant Conduct, Defendant agreed that he knowingly transmitted an electronic mail message containing a threat to kill another person. Id. at 2. The content of the message sent to "A.K." was ". . . Now I have no choice but to come to your house armed and put an end to you once and for all. The only way

you can stop this is by removing your stalker site and paying me $10,000.  You don't have a

choice."  Id.  Defendant also agreed that the United States could prove these and other facts

beyond a reasonable doubt, including facts related to a voicemail message Defendant left for the

Chief Investigator for the Oregon Department of Justice, Consumer Protection Section.  Id.  In

that message, sent the day after the email to A.K., the details of which are recited in the Plea

Agreement, Defendant told the investigator that the investigator was the only person who could

prevent A.K. from "suffering the ultimate consequences"; that Defendant had put "some events in

motion that are going to eliminate her as a threat to my company" and which "will kill her if she

doesn't stop it"; and further that A.K. was going to die if she put any more information up on a

website.  Id.

　　　　During the plea hearing, I specifically inquired with Defendant if he had any

disagreement with anything contained in Paragraph 5 of the Plea Agreement regarding the facts

and relevant conduct.  ECF 63/Attach. 7 to Gov't Resp. at 20.  Defendant said he had no

disagreement.  Id. at 21.

　　　　At the plea hearing, I carefully and thoroughly reviewed the Plea Petition with Defendant.

Id. at 5-32.  At one point, I noted Defendant was smiling and when I began to inquire, Defendant

stated, "Oh, I just think you spend way too much time explaining all this."  Id. at 13.  In response,

I made clear that I was going to ensure that Defendant understood exactly what he was doing

because this may be "one of the most important days of your life."  Id.  I indicated that I intended

to spend "a great deal of time until I am satisfied there are no questions in your mind."  Id. at 13-

14.  Defendant replied that he understood.  Id. at 14.

　　　　In the Plea Petition, Defendant represented to the Court that he and his counsel had

discussed his case fully, that he had read the Information, or it had been read to him, that he

discussed the Information with counsel, and that counsel had advised him concerning the nature

of the charge. ECF 46/Attach. 6 to Gov't Resp. at 1.  Defendant further represented that he "did

the following acts" and that the "following facts are true:" "On or about June 4, 201[2], in the

District of Oregon, I knowingly and intentionally transmitted in interstate commerce an email

communication containing a threat to injure the person of another." Id. at 6.

     During the plea hearing, I confirmed that Defendant had read the Plea Petition,

understood what it said, and had reviewed it with his counsel.  ECF 63/Attach. 7 to Gov't Resp.

at 6-7.  I confirmed that he had been advised and understood the elements of the charge to which

he was pleading guilty and that he had no questions about what those elements were.  Id. at 7.  I

reviewed the consequences of a conviction of a crime.  Id. at 10-11.  I also discussed rights that

Defendant gave up as a result of pleading guilty, including the right to a jury trial, the

presumption of innocence, the right to cross-examine witnesses, and to be represented by

counsel.  Id. at 12-15.  I discussed further consequences regarding sentencing and supervised

release as well as restitution.  Id. at 15-22.

     I confirmed with Defendant during the plea hearing that the facts recited in Paragraph 24

of the Plea Petition were true.  Id. at 26.  He responded yes when I asked him expressly if he in

fact engaged in that conduct.  Id. at 26-27.  Next, I asked the Government to recite the elements

of the crime and to outline its version of the facts and what the Government would show had the

matter proceeded  to trial.  Id. at 27.

     In response, the Government noted that as to

the elements, as set forth in Paragraph 3 of the plea agreement, the defendant

12 - OPINION & ORDER

understands that, first, on or about June 4th, 2012, in the District of Oregon, the first element is that the defendant knowingly caused a transmission in interstate or foreign commerce; that being an e-mail communication via the Internet. The second element would be that the transmission was a communication containing a threat to injure another person, which a reasonable person would take as a serious expression of an intention to inflict bodily harm upon that person; and, third, that the defendant caused the transmission with the intent to threaten the other person. And as set forth in the plea agreement, the defendant agrees that the United States can prove each element beyond a reasonable doubt.

Id.

The Government then continued in regard to the facts:

[T]he Government would prove beyond a reasonable doubt at trial that on or about June 4th, 2012, in the District of Oregon, the defendant knowingly transmitted an electronic mail message containing a threat to kill another person by the initials of AK . . . .

And he sent the following message on June 24, 2012 at 2:46 p.m. Pacific Daylight Time, from the e-mail . . . belonging to him, to an e-mail address at hotmail.com belonging to AK.

The transcript of that message is, quote, Now I have no choice but to come to your house armed and put end to you once and for all. The only way you can stop this is by removing your stalker site and paying me $10,000. You don't have a choice, end quote.

The following day he . . . called the chief investigator of the Oregon Department of Justice, the Consumer Protection Section, with whom he was familiar because civil complaints had been filed against the defendant, and the chief investigator had had some communication with the defendant. And the transcript of that message, the voice mail message he left with the chief investigator, is set forth in paragraph 5 of the plea agreement.

A summary of that is that the defendant called, told the chief investigator that he had set events in motion that would ultimately kill the victim of the offense, AK, within 24 hours if certain information wasn't removed from the Internet; and that if the chief investigator interfered with the defendant or reported him to the police, that he would also be targeted.

The defendant agrees that the transcript of that message is otherwise accurate and could be proved beyond a reasonable doubt.

13 - OPINION & ORDER

Id. at 28-29.

Next, I asked Defendant if he had any dispute with anything the Government had just said.  Id. at 29-30.  Defendant responded that he did not.  Id. at 30.

Although facts regarding sentencing are recited below, Olson notes in his Declaration that his Sentencing Memorandum discussed that actionable "true threats" for First Amendment purposes require the defendant to have the "subjective and specific intent to threaten."  ECF 51/Attach. 2 to Gov't Resp. at 15 (citing United States v. Cassel, 408 F.3d 622, 633 (9th Cir. 2005)).  The Sentencing Memorandum was mailed to Defendant on July 3, 2013, and Olson met with him on July 5, 2013 and July 9, 2013, to review the drafts, both of which contained the information about specific intent and a citation to Cassel, a case Defendant suggests in his motion that he was unaware of.  Olson Decl. at 4/Attach. 1 to Gov't Resp.   At that time, Defendant raised no concern with Olson that he had been misled or confused regarding the element of a specific or subjective intent to threaten when he entered his guilty plea.  Id.

C.  Discussion re: Plea Phase

1.  Olson

Defendant contends that Olson was constitutionally ineffective because he did not inform Defendant that the Government had to prove that Defendant specifically intended his email to A.K. to be a threat.  He argues that had he been properly informed, he would not have pleaded guilty to the Superseding Information and thus, he was prejudiced by Olson's ineffective assistance.

The record establishes that Defendant was placed on notice that the charged crime required the Government to prove that he caused the transmission with the intent to threaten A.K.

First, as Olson states, in preparation for the settlement conference with Judge Coffin, he specifically discussed the element of intent with Defendant.  Second, Olson further discussed the strategy of rebutting the Government's evidence of intent with evidence of Defendant's diminished capacity which limited Defendant's ability to form the requisite specific intent.  The diminished capacity evidence and arguments were relevant only to the specific intent to threaten as there was no issue regarding Defendant's intent to send the communication.  Third, Olson's January 2013 Settlement Memorandum confirms that Defendant was made aware of this element.  The Memorandum expressly discussed the requirement that the Government prove that Defendant intended his statement to be a threat under Section 875(c).  And, Olson cited to Twine, a case Defendant now contends was "foreign" to him.

Fourth, the Plea Agreement expressly recited specific intent to threaten as a separate element of the crime to which Defendant was pleading guilty.  Olson sent the Plea Agreement to Defendant ahead of the plea hearing and met with him in person to go over it.   In signing the Plea Agreement, Defendant represented that he had carefully reviewed every part of the Plea Agreement with counsel and understood and voluntarily agreed to its terms.  At the plea hearing, Defendant orally acknowledged that he had carefully reviewed every part of the Plea Agreement with counsel, that he understood and voluntarily agreed to its terms, that he signed it, and that he was pleading guilty because he was, in fact, guilty.

Fifth, at the plea hearing, the Government expressly identified the elements of the offense, including that Defendant caused the transmission with the intent to threaten the victim.  Sixth, at the plea hearing, as well as in the Plea Agreement, the factual basis for the plea was recited and included the transcript of the message Defendant sent to A.K. which is an

15 - OPINION & ORDER

unambiguous facially threatening statement that Defendant was going to come to A.K.'s house and "put an end to you once and for all[.]"  The Plea Agreement contained the transcript of the voicemail Defendant left for Geoff Darling, the Consumer Protection Division investigator, stating that the events Defendant had put in motion would kill A.K. in the next twenty-four hours if she did not stop certain conduct.  The contents of this voicemail were summarized at the plea hearing.  Defendant agreed on the record that the transcript of the message was accurate and could be proven beyond a reasonable doubt.

Olson's Declaration, the Settlement Memorandum, the Plea Agreement, Defendant's admissions in Court during the plea hearing, and the facts presented in the Plea Agreement and during the plea hearing demonstrate that Defendant's contention that he did not know his crime required a specific intent to threaten is unfounded.  On this record, Defendant does not create an issue that he lacked knowledge of the intent element.  Thus, Defendant's argument that Olson was ineffective for failing to inform him that the crime to which he was pleading guilty required the Government to prove that he intended this communication as a threat, is without any basis in the record.   His plea was not involuntarily, unknowingly, or unintelligently made.

Defendant further argues that his counsel was ineffective for allowing him to plead guilty to an Information which failed to contain all of the elements of the crime.  Defendant is correct that the Superseding Information did not expressly recite the element that Defendant intended his June 4, 2012 email to A.K. to be a threat.  It is also correct that although 18 U.S.C. § 875(c) itself does not contain this particular specific intent element, the Ninth Circuit, before Defendant's conduct at issue in this case occurred, held that a threat statute which criminalizes pure speech must contain a "subjective intent to threaten" element.  United States v. Bagdasarian, 652 F.3d

1113, 1116 (9th Cir. 2011).  The Supreme Court recently held that a defendant charged under 18

U.S.C. § 875(c) must intend the knowingly transmitted communication containing a threat, as a

theat.  Elonis v. United States, 135 S. Ct. 2001, 2011-12 (2015).

An information must be a "plain, concise, and definite written statement of the essential

facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  "An 'indictment is sufficient if

it, first, contains the elements of the offense charged and fairly informs the defendant of the

charge against which he must defend, and, second, enables him to plead an acquittal or

conviction in bar of future prosecutions for the same offense.'"  United States v. Davis, 336 F.3d

920, 922 (9th Cir. 2003) (quoting United States v. Bailey, 444 U.S. 394, 414 (1980)).  Generally,

where "the indictment tracks the words of the statute charging the offense, the indictment will be

held sufficient so long as the words unambiguously set forth all elements necessary to constitute

the offense."  Id. (internal quotation marks omitted); but see United States v. Morrison, 536 F.2d

286, 289 (9th Cir. 1976) (when intent element could not be inferred from the indictment, court

struck down the indictment for failing to allege specific intent even though the statute itself did

not contain the intent element).

While the Superseding Information here failed to expressly include the element that

Defendant intended the communication to be a threat, Olson was not ineffective for allowing

Defendant to plead guilty to that Information.  First, the Information was not defective because it

contains the specific intent requirement of "knowingly."  This is not a case where the charging

instrument completely failed to include any mens rea requirement at all.  Here, the charge that

Defendant "knowingly transmitted . . . an email communication via the Internet containing a

threat to kill another person, A.K.," can fairly be understood as requiring not only knowingly

17 - OPINION & ORDER

transmitting a communication containing a threat but knowing that the communication was a threat. Because of the inclusion of "knowingly," the Information fairly informed Defendant of the charge against him.

Second, even if the required specific intent cannot be discerned from the Information, the record, as explained above, establishes beyond doubt that Defendant knew at the time of the plea that the elements of the crime included his intent that the email be a threat. Additionally, it is important to note that because Defendant waived his right to proceed by indictment, the Information could have been corrected by simple amendment by the Government even during the plea hearing, without re-presenting the case to the grand jury. Fed. R. Crim. P. 7(e) (an information may be amended at any time before verdict or finding unless an additional or different offense is charged or a substantial right of the defendant is prejudiced).

As explained above, in assessing defense counsel's performance, the court presumes that "counsel's conduct falls within the wide range of reasonable professional assistance" and evaluates "the conduct from counsel's perspective at the time." Hibbler, 693 F.3d at 1149 (internal quotation marks omitted). The court inquires whether counsel's assistance was reasonable "considering all the circumstances[.]" Strickland, 466 U.S. at 688. Here, given all of the evidence discussed above, and in particular the Plea Agreement's express recitation of this specific intent element, the Government's express recitation of this specific intent element at the plea hearing, and Defendant's admission to facts including sending a facially threatening expression of his intent to kill A.K., Olson's failure to challenge the Information was not unreasonable. Defendant fails to show that any error Olson made fell below an objective standard of reasonableness when his conduct is considered in the context of all of the

18 - OPINION & ORDER

circumstances.

### 2. Court's Rule 11 Colloquy

Although not noted as a separate "Ground" for relief, Defendant's challenge to Olson's conduct at the plea phase includes an allegation that this Court violated Federal Rules of Criminal Procedure 11(b)(1)(G) and 11(b)(3) by failing to personally inform Defendant of, and determine that Defendant understood, the nature of the charge to which he pleaded guilty, and by failing to determine the existence of the factual basis for the plea. Def.'s Mtn. at 32-35. The transcript of the plea hearing refutes Defendant's argument. As already explained, the Government recited all of the elements of the charge at the plea hearing. The Plea Agreement contained all three elements. It also contained the contents of the email to A.K. and the voicemail left for Darling. During the plea hearing, Defendant confirmed that he had read the Plea Agreement, understood it, and had reviewed it with counsel.

Also at the plea hearing, Defendant expressly stated he had no disagreement with anything in the Plea Agreement regarding the facts and relevant conduct presented in that document. After the Government recited the three elements of the crime and the facts it would show if the matter proceeded to trial, Defendant expressly stated he had no dispute with anything the Government had presented. The record establishes that during the plea colloquy, Defendant was informed of the nature of the charge to which he pleaded guilty and confirmed his understanding of the nature of the charge. Further, the record establishes that I determined the factual basis for the plea. Defendant's Rule 11 argument is without merit.

### D. Facts Regarding the Sentencing

Defendant was sentenced on July 18, 2013. Before that date, Olson submitted a twenty-

one page Sentencing Memorandum.  ECF 51/Attach. 2 to Gov't Resp.   Several exhibits were

attached.  Id.  Olson also submitted confidential letters regarding Defendant's mental health.

Attach. 10 to Govt's Resp. (Filed Under Seal).

In the Sentencing Memorandum, Olson recited the background of the offense in some

detail, including facts regarding Defendant's websites, A.K., and the relationship between

Defendant and A.K.  Id. at 1-8.  He then argued against a six-level enhancement under United

States Sentencing Guideline (USSG) § 2A6.1(b)(1) recommended by the Government and the

Pre-Sentence Report (PSR) for offense conduct evidencing an intent to carry out the threat.  Id. at

8-14.  He also argued against enhancements for multiple threats and obstruction of justice  Id. at

14-17.  He argued for a two-level downward departure based on diminished capacity and for a

departure based on A.K.'s provocation.  Id. at 17-19.  While agreeing that the PSR correctly

calculated Defendant's criminal history category, Olson made several points about Defendant's

criminal history.  Id. at 19-20.

Olson also addressed issues regarding Defendant's supervised release.  Id. at 20-21.  He

noted that Defendant's ability to earn an income would be tremendously impacted if he could not

have access to computers or the Internet.  Id. at 20.  He objected to restrictions being placed on

Defendant's access to and maintenance of the various websites he developed, none of which,

Olson noted, were illegal.  Id.

Olson argued that with a base offense level of twelve, and subtractions of two levels for

acceptance of responsibility, two levels for the victim's wrongful conduct, and two levels for

diminished capacity, Defendant's total offense level was six.  With a criminal history category of

III, Olson argued for a sentence of time served, noting that Defendant had been in custody since

20 - OPINION & ORDER

June 7, 2012.  Id. at 21.

At the sentencing hearing, the Government and Olson orally argued their positions

regarding the six-level enhancement for intending to carry out the threat, the two-level

enhancement for obstruction of justice, and the two-level enhancement for multiple threats.  ECF

64/Attach. 8 to Gov't Resp. at 1-28.  I agreed with Olson that the six-level enhancement did not

apply.  Id. at 27.  I agreed with the Government that the offense level should be increased for

obstruction of justice and multiple threats.  Id. at 27-28.

As to the arguments in support of downward adjustments for diminished capacity and

provocation, Olson relied on the arguments made in his Sentencing Memorandum, but offered to

answer any questions.  Id. at 26.  I rejected these arguments, but allowed a downward adjustment

for acceptance of responsibility.  Id. at 29-30.

Next, the Government called Kevin Demer, the state prosecutor who had previously tried

Defendant on a state reckless endangerment charge.  Olson objected, because he had not been

told until the morning of the sentencing hearing that Demer would testify.  Id. at 29.  The

Government clarified that it desired to call Demer in response to an assertion in Olson's

Sentencing Memorandum that the evidence from the reckless endangerment trial was that

Defendant did not intend to harm anyone. Id. at 30.  The Government represented that Demer

would testify that Defendant threw a sixteen-ounce glass of beer at a bouncer who ducked,

causing the glass to hit and break a television.  Id. at 30-31.  I took a recess to allow Olson to

interview Demer and decide if he needed more time to investigate the proposed testimony.  Id. at

31.  After the recess, counsel for the Government and Olson agreed that the Government would

proffer what Demer would testify to.  Id. at 32.  The Government made the proffer and Olson

agreed to proceed.  Id.

Next, A.K. presented an oral statement, after which the Government made a closing argument in support of a twenty-four month sentence.  Id. at 33-34.[3]  In addition to relying on facts about the crime to which Defendant pleaded guilty, the Government noted what it described as the "graduated violence" in each of Defendant's prior convictions.  Id.  Olson then introduced Defendant's mother and stepmother, both of whom had submitted statements to the Court.  Id. at 35.  Olson next made a comprehensive closing argument, concluding with a request for a variance of the 18-24 month range based on the USSG calculations, to a 6-12 month range and a twelve-month sentence.  Id. at 38-39.  Next, Olson responded to questions regarding Defendant's use of computers once he was on supervised release.  Id. at 39-41.  Defendant was then given the opportunity to make a statement, which he did.  Id. at 41-47.  In the end, Defendant received a twenty-four month sentence.  Id. at 49.

E.  Discussion re: Sentencing

Defendant argues that Olson was ineffective at sentencing because he made constitutionally defective errors in several instances.  In regard to the two-level enhancement for multiple threats under USSG § 2A6.1(b)(2)(A), Defendant argues that Olson erred by (1) not arguing that any threats made after the offense conduct, including the voicemail left for Darling, cannot be used as a basis for enhancement under USSG § 2A6.1(b)(2); see USSG § 2A6.1(b)(2), App. Note 1 (conduct to be considered in determining enhancements under USSG § 2A6.1(b)(2)

---

[3]  The Government had sought a forty-six month sentence.  ECF 48.  But, because I rejected the six-level enhancement earlier in the sentencing hearing, the Government adjusted its argument but retained its position that Defendant should receive the high-end of the applicable range.

is conduct occurring prior to the offense and conduct occurring during the offense); Def.'s Mtn. at 38-39; (2) not arguing at the sentencing hearing that the remaining threats were not "true threats" and thus could not qualify for the enhancement; Id. at 39-41; and (3) not requiring a finding of guilt in regard to the remaining threats upon which the enhancement was based.

First, assuming for the purposes of this Opinion that Olson erred by failing to challenge post-offense conduct as a basis for the enhancement, there is no prejudice because a sufficient number of multiple threats remained. Second, Olson spent several pages of the Sentencing Memorandum reciting the victim's conduct and making the "true threat" argument. He did not render defective performance by failing to restate his position verbatim at the sentencing hearing. Third, the Government's Sentencing Memorandum provided details of the other emails. ECF 48. The PSR also recited the contents of all the emails sent to A.K. on June 4, 2012. Attach. 9 to Gov't Resp. at ¶¶ 18, 19 (Filed Under Seal). "Hearsay evidence of unproved criminal activity not passed on by a court . . . may be considered in sentencing." United States v. Vanderwerfhorst, 576 F.3d 929, 935 (9th Cir. 2009) (internal quotation marks omitted). Additionally, "the district court may rely on an uncontroverted PSR to establish the factual basis for sentencing enhancement." Id. (citing United State v. Romero-Rendon, 220 F.3d 1159, 1163 (9th Cir. 2000)). Defendant, who had the Government's Sentencing Report and the PSR, did not challenge the content of the other emails at the sentencing hearing. Defendant's argument here is not that the emails were not sent or were misrepresented. Instead, it is that Olson did not argue that the content of the emails had not been expressly admitted or found by a jury. As the law makes clear, neither is required for sentencing enhancement and Olson's conduct in this regard was not deficient.

23 - OPINION & ORDER

Next, in regard to the obstruction of justice enhancement under USSG § 3C1.1, Defendant first makes an argument that the phone call to Darling should not be considered under this enhancement because it was not willful given that Defendant claims to have been unaware of any state or federal criminal investigation at that time.  But, he fails to assert how Olson was deficient in this instance.  Def.'s Mtn. at 42-43.  Moreover, given that there was evidence of more than one incident there is no prejudice even if this incident is disregarded.  Second, he asserts that in regard to the courtroom outburst incident, Olson was ineffective because he failed to respond to an argument the Government made at sentencing.  Government counsel responded to a statement made by Olson that Defendant was "just upset with what she said[,]" referring to statements by the victim during a court hearing.  Attach. 8 to Gov't Resp. at 19.  Government counsel contended that Defendant was reacting not only to the victim's statements but also to the judge at that hearing who denied his release request.  Id.  Government counsel continued:  "So it wasn't as if he was so upset at false or misleading statements, because she made none at that hearing."  Id.

Defendant argues that Olson was ineffective for allowing Government counsel "to have the last word[.]"  Def.'s Mtn. at 44.  I reject this argument.  Olson made the relevant points about the courtroom outburst both in his Sentencing Memorandum and at the sentencing hearing.   He did not fail to address the evidence or make a relevant argument.

Next, Defendant argues that Olson was ineffective in regard to the downward adjustment requests based on the victim's conduct, diminished capacity, and for "single instance without deliberation."  Id. at 56.  As to the victim's conduct, Olson made this argument and thoroughly detailed the facts of the relationship between Defendant and his victim in his Sentencing

Memorandum.  ECF 51/Attach. 2 to Gov't Resp. at 3-6, 18-19.  Defendant suggests that Olson was ineffective for failing to prove, through "spectographic analysis" that the 911 call on March 10, 2012, in which the caller asserted that Defendant was holding hostages in his home, was made by A.K.  Olson and the PSR both asserted that A.K. made that 911 call.  Although Government counsel asserted at the sentencing hearing that A.K. did not make the call, I made no finding consistent with the Government's representation and relied on the PSR.  Olson's argument as to this downward adjustment was thorough and more than adequate.

       As to diminished capacity, Defendant's primary argument is that Olson was ineffective for relying on the argument in his Sentencing Memorandum and not re-arguing his position orally at the sentencing hearing.  This argument has no merit.  Olson addressed the diminished capacity argument in his Sentencing Memorandum and separately submitted two psychological evaluations of Defendant.  In an additional confidential letter sent to the Court, he expressly addressed the psychological opinion regarding Defendant's diminished capacity.  Attach. 10 to Gov't Resp.  (Filed Under Seal).  Olson's reliance on his written submissions was not unreasonable.

       Defendant's argument regarding a "single instance" downward adjustment is premised on a conclusion that the multiple threat enhancement does not apply.  For the reasons explained above, Olson was not ineffective in regard to the multiple threat enhancement and I reject Defendant's argument.  Alternatively, Defendant suggests that even if the multiple threat enhancement applied, Olson was still ineffective for failing to raise the downward adjustment argument under USSG § 2A6.1(b)(6).  Defendant is incorrect.  USSG § 2A6.1(b)(6), which allows for a decrease of four levels, applies only if subdivision (b)(2) for multiple threats does

not apply.  Thus, even if Olson had made the single instance argument under USSG §

2A6.1(b)(6), I would have rejected it because I applied the two-level enhancement under

subdivision (b)(2).  See United States v. Anderson, 474 F. App'x 672, 673 (9th Cir. 2012)

(defendant's request for decrease under "single threat" adjustment of USSG § 2A6.1(b)(6), was

precluded by determination that there were multiple threats).

Finally, Defendant argues that Olson was ineffective in regard to his supervised release

conditions requiring Defendant to obtain prior written approval from a United States Probation

Officer before using or possessing a computer or accessing any on-line computer.  He argues that

Olson should have argued that the restrictions violated his First Amendment rights, were

overbroad, and unjustified by the record.

Olson addressed supervised release computer restrictions in his Sentencing

Memorandum, advocating for Defendant's access to computers, the Internet, and Defendant's

websites.  ECF 51/Attach. 2 to Gov't Resp. at 20-21.  At the sentencing hearing, Olson again

discussed the conditions which were recommended in the PSR.  ECF 64/Attach. 8 to Gov't Resp.

at 40-41.  In December 2014, the Ninth Circuit rejected Defendant's argument that these

restrictions were unconstitutional, expressly noting that the use of a computer and the Internet

were essential to the commission of the crime.  United States v. Sullivan, No. 13-30207, 588 F.

App'x 631 (9th Cir. 2014), cert. denied, 135 S. Ct. 1877 (2015).  Accordingly, any failure by

Olson in not expressly raising these issues at sentencing caused no prejudice.

III.  Certificate of Appealability

The district court should grant an application for a certificate of appealability only if the

petitioner makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. §

26 - OPINION & ORDER

2253(c)(3).  The Court concludes Defendant has failed to make a "substantial showing of the denial of a constitutional right" on all issues except for whether Olson was ineffective in advising Defendant to plead guilty to the Superseding Information which did not expressly recite the element of the crime regarding the intent to convey a threat.  Thus, on this record the Court issues a certificate of appealability only as to the specified issue and declines to issue a certificate on any other issues.

CONCLUSION

Defendant's Motion to Vacate or Correct Sentence under 28 U.S.C. § 2255 [69] is denied.

IT IS SO ORDERED.

Dated this _____ day of _____, _____.

_____
Marco A. Hernandez
United States District Judge

27 - OPINION & ORDER