Cyrus Sullivan
74918-065
United States Penitentiary
P.O. Box 3900
Adelanto, CA 92301

FILED 07 MAR '16 12:19 USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA. | 3:13-CR-00064-HZ (Referencing 3:15-CV-00711-HZ) |
| v. | |
| CYRUS ANDREW SULLIVAN, | MOTION FOR AMENDMENT OF FINDINGS, TO MAKE ADDITIONAL FINDINGS, AND TO AMEND JUDGMENT |
| DEFENDANT | |

I The Defendant, Cyrus Andrew Sullivan, appearing pro se,
hereby moves The Court to amend its findings, make additional
findings, and amend its judgment in accordance with Federal
Rule of Civil Procedure 52(b) ("Rule 52(b)") which states "on
a party's motion filed no later than 28 days after entry of
judgment, the court may amend its findings-or make additional
findings-and may amend the judgment accordingly." This motion
is in response to The Court's denial of Febrary 16, 2016 rej-
ecting both my Rule 59(e) motion of January 21, 2016 and my
Rule 15 motion of January 25, 2016. This motion is necessary
to better develop the record for appeal with The Court's art-
iculation of reasons for the denial of previous post-judgment
motions, improve upon its previous findings, and to make add-
itional findings to include the latest results of my ongoing
research in support of my claims that will hopefully convince

1

The Court to amend its judgment in my favor and avoid a leng-thy appeal.

## Response to Denials

After having read the one sentence order denying my Rule 59(e) and Rule 15 motions without any explanation as to why I can only speculate as to The Court's misguided reasoning. According to my ongoing research "a district court would [un]necessarily abuse its discretion if it based its ruling on an erroneous view of the law", Cooter v. Gell v. Hartmax Corp. (496 U.S. 384), so with its view unstated I will try to guess the reasoning behind The Court's abuses while keeping in mind for appeal that having no view at all might as well be an erroneous one.

A Rule 15 motion can only be denied for "undue delay, bad faith, or dilatory motive on movant's part...[or] undue prej-udice to opposing party by virtue of allowance of amendment, or futility of amendment", Foman v. Davis (371 U.S. 178). As this is a habeas corpus case the speedy resolution of which only benefits me, any delay in these proceedings would be a "short delay" under Riley v. Taylor (62 F.3d 86), I have no dilatory motive to unduely delay these proceedings with time-ly motions made in good faith, and any motion that seeks to add valid information or claims in the hopes of avoiding a lengthy appeal cannot be said to have been made in bad faith.

Entertaining the motions would only require that the government be given copies of them as discovery and thus they would "not be unduly prejudiced by minimal further discovery", La Salvia v. United Dairymen of Arizona (804 F.2d 1113) and the motion being made "after dismissal of cause does not of itself constitute prejudicial delay", Foman. This leaves us with futility, which would only apply if The Court chose to continue sticking by its erroneous belief in the sufficiency of the information (see Opinion and Order of January 6, 2013, "OO", p. 17-18).

In order to support my Rule 15 arguments The Court would just need to re-open the case using my Rule 59(e) motion. See Acevedo-Villalobos v. Hernandez (22 F.3d 384) "where complaint is dismissed without leave to amend, plaintiff can appeal judgment or seek leave to amend under Rule 15(a) after having judgment reopened under either Rule 59 or Rule 60" and Williams v. Citigroup Inc. (659 F.3d 208) "District Court abused its discretion when it denied plaintiff's postjudgment motion , under Fed.R.Civ.P. 59(e) and 60(b), for leave to amend her complaint because district court applied standard that over emphasized considerations of finality at expense of liberal amendment policy in Federal Rules of Civil Prodedure". 59(e) permits the corrections of errors of law or fact, and the submission of new evidence. In this case "the denial of the Fed.R.Civ.P. 59(e) motion to vacate judgment was an abuse of discretion because the dismissal of the original complaint with prejudice was erroneous", Firestone v. Firestone (76

F.3d 1205). Although all new information presented in all of my post-judgment motions including this one could technically have been discovered earlier if I knew where to look, it is still "new" for the purpose of this case because under Rule 59 new information is information "not already considered and rejected from evidentiary admission by the court", U.S. v. Hinkson (585 F.3d 1247). Please consider my previous Rule 59 and Rule 15 motions as well as their erroneous denials when considering this motion along with the case as a whole because errors need to be addressed with new evidence that should resolve these non-futile claims in my favor.

## New Discoveries

Since filing my previous post-judgment motions I have come to realize that questions of jurisdiction never needed to be raised by my attorneys, that my Cronic claim could also pass the Strickland test, my second Ground for Relief is at least worthy of reasonable debate, my waiver was not voluntary, cumulative error warrants vacation of conviction, relief for all these issues may also be available under Rule 59(e) as well as Rule 15, and the certificate of appealability ("COA") should be expanded to all these debatable issues that any reasonable jury should feel free to quarrel about.

## Rule of Criminal Procedure 12

I now realize that Per Olson should have filed a motion

4

to dismiss under Federal Rule of Criminal Procedure 12 ("Rule 12") immediately following my arraignment on the superseding information on April 15, 2013 (see Plea Hearing Transcript, "PHT", p. 3-5) this would have allowed The Court to scrutinize the information using a standard of review favoring me instead of The Government. This should have resulted in the information being dismissed for failing to state an offense. At the time my right to file pre-trial motions had not been waived and in the event of the motion being unsuccessful I could have appealed it. That appeal would have been reviewed in my favor by scrutinizing the information instead of using the more liberal standard applied post-plea that only requires that "the necessary facts appear in any form or by fair construction" U.S. v. Velasco-Medina (305 F.3d 839) quoting U.S. v. James (980 F.2d 1314). Had my information been challenged pre-plea at the plea hearing The Court's concession (OO, p. 16-18)that an element of the offense is missing guarantees, in my eyes at least, that the standard under U.S. v. Pernillo-Fuentes (252 F.3d 1030) would have been applied and the charge dismissed. Under Pernillo-Fuentes my information should have been evaluated like the indictment in U.S. v. Du Bo (186 F.3d 1177) in which the Ninth Circuit held "If properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal".

The Court suggests that such a motion to dismiss could have
been resolved by amending the information under Rule 7(e)
(OO, p. 18)and I cited case law to the contrary in my Rule
59(e) motion (p. 3-4). Everything I have read since indicates
that The Court torpedoed its own argument by citing the part
of Rule 7(e) that says "an information may be amended at any
time before verdict or finding unless an additional or diffe-
rent offense is charged" because an information that charges
no offense cannot be amended to charge an offense without
increasing the number of offenses charged from zero to one.
In order to increase the quantity of anything from zero to
one addition is required and in this case that addition takes
place in the form of an additional offense. To state otherwi-
se would be mathematically impossible, a fact that I recall
learning from a first grade math class when I was five years
old.

In the Ninth Circuit Rule 7(e) permits amendments in whi-
ch the "change concerns matters of form rather than substance
", U.S. v. Perez (776 F.2d 797). See also U.S. v. Kladouris
(739 F. Supp. 1221) in which an amendment to a charge of ass-
ault under 18 U.S.C. 111 to include resisting was denied for
charging the additional offense of resisting in the same ind-
ictment under the same statute for the same incident. Also
in frequent use is U.S. v. Nitti (733 F. Supp. 496) in which
an amendment of drug quantity was allowed because it was not
a "material" element, unlike intent in my case which is.

6

Unfortunately, in order to file that motion to dismiss ??
Mr. Olson would first have had to have known that the inform-
ation failed to charge an offense. Failing to notice that
falls below the level of competance expected of a lawyer and
failing to advise me of that fact rendered my plea unknowing,
involuntary, and unintelligent. See Gideon v. Wainwright (372
U.S. 335) quoting Powell v. Alabama (287 U.S., at 68, 69)
"The right to be heard would be, in many cases, of little
avail if it did not comprehend the right to be heard by couns-
el. Even the intelligent and educated layman has small and
sometimes no skill in the science of law. If charged with a
crime, he is incapable, generally, of determining for himself
whether the information is good or bad...He lacks both the
skill and knowledge adequately to prepare his defense, even
though he have a perfect one. He requires the guiding hand of
counsel at every step in the proceedings against him." Preju-
dice is presumed when "the defendant is denied counsel at a
critical stage", Miller v. Martin (481 F.3d 468) quoting U.S.
v. Cronic (466 U.S. at 659). "Courts have not hesitated in
finding ineffective assistance of counsel based upon isolated
-but important-errors", Prou v. U.S. (199 F.3d 37). Although
it has been hard to find cases in which counsel both failed
to notice a fatally defective charging instrument and recomm-
ended that his client plead guilty to a non-offense, I did
finally find one that has been cited repeatedly over the yea-
rs and is still cited to this day. "Counsel's advise that the
defendant should plead guilty to a clearly defective indictm-

ent was ineffective assistance that rendered the plea unknow-
ing and involuntary and required that the conviction be vaca-
ted", Cooks v. U.S. (461 F.2d 530). Under Cooks Ground for
Relief 1 in my original 2255 (p.19 -25) should have been gran-
ted.

## Rule of Criminal Procedure 34

In my Rule 15 motion (p. 1-3) I raised a claim of ineffe-
ctiveness at the post plea stage in which I was completely
denied counsel for 14 days during which Mr. Olson should have
realized that the information failed to charge an offense and
filed a motion to arrest judgment. At the time of my motion I
didn't know that the language of the statute at the time of
my plea permitted challenges to the sufficiency of the infor-
mation, that the information failed to state an offense, cou-
ld be challenged under the rule without having to reach the
jurisdictional question. This was due to Rule 12 permitting
such a challenge at any time, case law on that aspect of Rule
12 will be addressed further on in this motion. Any motion
challenging the information under the part of Rule 34 that
stated "upon defendant's motion...the court must arrest judg-
ment if...the indictment or information fails...to state an
offense" would have likely been successful if properly judged
on its merits. If denied I could have appealed the denial of
the "motion to arrest judgment. We review the district court-
's denial of that motion for an abuse of discretion", U.S. v.

Rodriguez (360 F.3d 949).

On appeal I most likely would have seen the conviction vacated because unlike Velasco-Medina my information failed to charge an offense by any reasonable construction. In both Velasco-Medina and James charging instruments that failed to charge an essential element were saved by citing statutes that did contain the elements. As This Court has already held 875(c) does not contain the element omitted from the charging instrument (OO, p. 17-18). The Court's effort to save the information with the word "knowingly" is contrary to both the arguments I made in my 59(e) motion (p. 4-7 ) and clearly established case law. See U.S. v. Heller (579 F.2d 990) where "the adverbs 'willfully' and 'knowingly' were in juxtaposition to and were clearly intended to modify the verbs contained in the clause 'transmit and cause to be transmitted in interstate commerce'", just like in my case with the only difference being the omission of specific intent to extort from Heller's 875(a) charge versus the omission of specific intent to threaten from my 875(c) charge. Without being saved by "knowingly" my information is no different than other cases in which charging instruments have been struck down post plea or verdict for failing to state an offense by omitting an essential element even after being reviewed liberally in favor of sufficiency.

Cases such as U.S. v. Shaw (655 F.2d 168) in which the Ninth Circuit "held that a federal rule of criminal proced-

ure preserved appellant's right to file a motion in arrest
of judgment after his guilty plea". In Shaw's case his ind-
ictment was defective for charging bribary of a public off-
icial that turned out not to be a public official. He admi-
tted bribing an employee of the Federal Reserve Bank, but
employees of the Federal Reserve Bank were not public offi-
cials within meaning of the statute. The court also held
that the Government engaged in vindictive prosecution when
filing a motion to vacate Shaw's plea and re-instate charg-
es that were dismissed as part of his plea agreement. The
Court said "Shaw opposed the Motion to Vacate arguing that
the government had no basis for making such a motion, that
he had complied with the provisions of the plea agreeme-
nt, and that the government's attempt to vacate the plea and
set Shaw for trial amounted to vindictive prosecution", the
court agreed with Shaw by saying "The government adops a
position that would effectively deprive any defendant who
pleads guilty of the right to file a Motion in Arrest of
Judgment."


Other cases in common usage include U.S. v. Gibson (409
F.3d 325) and U.S. v. Hathaway (318 F.3d 1001). Both invol-
ved post-conviction challenges in which charging instrumen-
ts failed to include essential elements. In Gibson the ess-
ential element of having a duty to disclose certain inform-
ation was omitted from a 18 U.S.C. 1001 indictment and the
court concluded that because the indictment "does not even

mentio

mention the disclosure of hazardous conditions - it does not charge an offense under 1001. The district court therefore did not err in arresting judgment". In Hathaway, like in Gibson and my case "even if we were to apply the liberal construction rule, we would still have an indictment suffering from much more than a technical deficiency".

Finally, the court in Heller made it clear that even though Rule 12 permitted sufficiency of information challenges at any time, the best way to make such a challenge post-plea was via a Rule 34 motion to arrest judgment. Even after the 14 days to file were up Mr. Olson was ineffective for failing to file an appeal for failing to charge an offense. See U.S. v. Al Hedaithy (392 F.3d 580) "we must also decide whether Al-Aiban's gulty plea resulted in a waiver of his right to challenge the sufficiency of his superseding indictment...the plain text of Rule 12(b)(2)[now Rule 12 (b)(3)(B)], together with our previous interpretation of that rule, required the Panarella Court to reach the merits of his appeal notwithstanding the unconditional guilty plea " citing U.S. v. Panarella (277 F.3d 678).

Rule of Criminal Procedure 12 on Appeal

Now that I've established Mr. Olson's ineffectiveness for failing to appeal, I now want to establish Bronson James' on appeal using basically the same grounds. A waiver of appeal is not absolute because it only waives those rights

11

that are legally waivable. For instance I have the right to
be free from corporal sodomy even if I sign an agreement
waiving that right because we all have a right to be free
from corporal sodomy and that right cannot be waived. Like-
wise waivable rights do not include the right to plain err-
or review on appeal, as was the case in my first appeal
(588 F. Appx. 631) and as established by Al Hedaithy along
with Panarella ~~did not include~~ did not include the right to
challenge the sufficiency of the charging instrument on
appeal.

In my 59(e) motion (p. 12-14) I made for the first time
a claim that Mr. James failed to seek relief on appeal that
the information failed to charge an offense under jurisdic-
tional grounds. I have since read cases including Al Hedai-
thy, Panarella, and Velasco-Medina that have made it clear
to me that Mr. James could have challenged the sufficiency
of the information on appeal without having to challenge
jurisdiction under the plain text of Rule 12 as it existed
at the time of my appeal under Rule 12(b)(3)(B) [formerly
Rule 12(b)(2)] which provided that an objection that "the
indictment or information fails to charge an offense...sha-
ll be noticed at any time during the pendency of the proce-
edings." Al Hedaithy relied primarily on the conclusion of
the Panarella court which stated that "Because we hold that
Rule 12(b)(2) requires us to entertain this appeal notwith-
standing Panarella's unconditional guilty plea, we need not
reach Panarella's alternative 'jurisdictional' argument for

12

why this appeal survives his guilty plea...In reaching the
merits of Panarella's argument notwithstanding his uncondi-
tional guilty plea, we join the Fifth, Ninth, and Eleventh
Circuits". Panarella cited U.S. v. Caperella (938 F.2d 975)
for the opinion of this issue in the Ninth Circuit. "The
government's position that Velasco-Medina waived any objec-
tion to the indictment's sufficiency by failing to raise it
in the district court has been repeatedly rejected in this
circuit", Velasco-Medina (Ninth Circuit).

An interesting observation of Panarella indicates that
opinion supports factual challenges to allegations in the
case as a broader scope than the challenge I would have had
Mr. James make "The government argues that in interpreting
Rule 12(b)(2) [now Rule 12(b)(3)(B)], we should construe
the phrase 'fails...to charge an offense' narrowly, to cov-
er only those cases where the charging instrument complete-
ly neglects to mention, even in general terms, an element
of the offense". Under Panarella, in theory, the government
should have supported any claim made by me on appeal that
my information did not contain an essential element.

In my original 2255 (p. 3) I mentioned how Mr. James
stated that he couldn't represent me on 2255 because it
would call into question his representation on appeal. At
the time I thought that was just a formality, but now I see
it as him realizing that he screwed up. A screwup similar
to that in Lynch v. Dolce (789 F.3d 303) in which "[a]ppel-

13

late counsel's failure to raise...[meritorious] issue
[...defining element of crime] and [appellate counsel's]
decision instead to raise weaker issues that were unlikely
to succeed fell below prevailing norms of professional con-
duct" in my case the failure being the failure to challenge
sufficiency of the information and instead only challenging
the legality of the unconstitutional release conditions.
"Whether the [court] would have been persuaded is immateri-
al...[abandoning] a non-frivolous claim that was both 'obv-
ious' and 'clearly stronger' is deficient", Shaw v. Wilson
(721 F.3d 908) citing Jones v. Barnes (463 U.S. 745) and
Smith v. Robbins (528 U.S. 259). See also McFarland v. Yak-
ins (356 F.3d 688) "appellate counsel's failure to raise...
argument [that 'would have likely prevailed'] was sufficie-
ntly unreasonable to violate McFarland's right to counsel",
Joshua v. Dewitt (341 F.3d 430) "appellate counsel was ine-
ffective in failing to raise...issue, although not litigat-
ed at trial level, could have been raised on appeal as pla-
in error", and Claudio v. Scully (982 F.2d 798) "there was
a 'reasonable probability' that [my] claim would have been
successful". Please declare Mr. James ineffective on appeal
and vacate my conviction.


## My Cronic Claim


In my 59(e) motion (p. 8-10) I went into great detail
about my Cronic claim. I have since realized that the claim
may suffice under Strickland after all. In Dobbs v. Zant

14

(506 U.S. 357) the Supreme Court held that as little as one comment amounting to a concession can render a lawyer's representation constitutionally deficient. See also Francis v. Spraggins (720 F.2d 1190) "counsel's complete concession ...nullifies his right to have the issue...presented...as an adversarial issue and therefore constitutes ineffective assistance." Finally, Horton v. Zant (941 F.2d 1149) in which prejudice under Strickland was established when "Horton's counsel's argument...encouraged rather than discouraged the" sentence and "attempts to distance [himself] from his client could only have hurt Horton's case."

## My Second Ground for Relief

Ground for Relief 2 in my original 2255 (p. 25-36) stated that my plea was not knowing, voluntary, or intelligent due to ineffective assistance of counsel. As the court said (OO, p. 8-14 and 19-20) Mr. Olson did prove that he used the phrases "specific intent" and "subjective intent" before I pled guilty, but he never explained their true meaning in his settlement letter. I find this puzzling because although none of the cases cited in the letter described what a "true threat" under 875(c) truly is, he did cite a case at sentencing that upon further review reveals a good explanation. Still at sentencing he never used the explanation from the case to support his arguments (Defendant's Sentencing Memorandum, "DSM", p. 14-16). That case was U.S. v. Cassel (408 F.3d 622) in which the Ninth Circuit defined a

15

"true threat" as one made "with the intent of placing the victim in fear of bodily harm". Now if Mr. Olson really explained the meaning to me accurately then why didn't he use the true description in any of his arguments?

This also got me asking myself, what should a sufficient information charging an 875(c) violation look like? In my case I believe that the following would be sufficient:

> On or about June 4, 2012, in the District of Oregon, defendant Cyrus Andrew Sullivan knowingly transmitted and caused to be transmitted in interstate or foreign commerce a communication containing a threat to injure the person of another, to wit, an email communication via the internet containing a threat to kill another person, A.K., which a reasonable person would take as a serious expression of an intention to inflict bodily harm upon A.K., with the intent of placing that person , A.K., in imminent fear of bodily harm. All in violation of Title 18, United States Code, Section 875(c).

If the above were the charging instrument in my case then and only then would my claims of ineffectiveness of counsel for not challenging it or at least inform me of its deficiency be meritless. I argue that statements in the settlement letter, plea agreement, and plea hearing do not sufficiently give notice just by using terms like "intent" to threaten without explaining what that means. If forced to appeal I will ask the Ninth Circuit to mandate that all charging instruments under section 875 include a descriptive specific intent to threaten element such as the one described above from now on.

16

While on the subject of specific intent I also feel
that the plea was not necessary to dismiss what was I beli-
eve to be an equally defective 875(b) charge in my original
indictment. I now believe Mr. Olson was ineffective for not
noticing that specific intent to threaten was not alleged,
never informing me of that fact or the options available to
me due to it, and failing to file a motion to dismiss. The
basic justification for this is that the original indictme-
nt was word for word just like the superseding information,
but with an additional intent to extort element. Like all
statutes criminalizing threats 875(b) requires an element
of specific intent to threaten and remember that the other
count was also facially defective, but on an even more obv-
ious level. Despite my exposure if convicted, given the
evidence, I do not see how advising me to plea guilty was
reasonable or helpful to me at all.

Finally, The Court erroneously stated "the diminished
capacity evidence and arguments were relevant only to the
specific intent to threaten" (00, p. 15) when in fact the
diminished capacity evidence focused quite a bit on object-
ive intent. As I said in my reply to the Government's resp-
onse (p. 11) Mr. Olson should have focused on anger issues
resulting from Asperger's instead of saying stuff like
"defendant's judgment and ability to conform to societal
expectations were compromised". That suggests that a reaso-
nable person would take the "threat" seriously and I didn't
realize ████████████ that because people with Asperger's

17

have a diminished ability to see things from other peoples
perspectives. As a result people with Asperger's tend to do
things inappropriately without realizing how inappropriate
their behavior appears to some other people because they see things
differently. This suggests that I didn't realize that a
reasonable person could take the "threat" seriously, when
in fact I knew a reasonable person could on its face take
it seriously, but knew that my stalker wouldn't due to the
context of our bickering. It is like when Mr. Olson said
"nobody sees it this way except for you" because I have
Asperger's, when in fact he failed to see things accurately
due to his conflicting beliefs, personal views, and a cert-
ain level of gullability that the Government was able to
exploit.

Some of his arguments focused on diminished capacity
resulting in an angry email being sent without thinking
about how it could be perceived, but nothing related to
intentionally trying to make her genuinely afraid due to
Asperger's. Perhaps the closest he got to accusing me of
making a "true threat" due to Asperger's was when he said
that I have a limited "ability to form rational intent in
emotionally charged situations" (settlement letter, p. 2)
, but I never intended to seriously scare her, so any atte-
mpt to suggest that I intended to do so due to my condition
is inappropriate.

Involuntary Waiver

18

In my 59(e) motion (p. 10-12) I discussed the involunt-
ary waiver of appellate rights. I have since found examples
of plea agreements preserving appellate rights that Mr.
Olson should have told me about and if he had I would not
have permitted a waiver such as mine, see U.S. v. Corso
(549 F.3d 921) "John D. Corso, III may take direct appeal
from the sentence" and in the Ninth Circuit U.S. v. Spear
(753 F.3d 964) which preserved the right to appeal convict-
ion, so why not the sentence?

As for not being warned of the dangers of being repres-
ented by Mr. Olson at sentencing due to his overwhelming
desire not to be seen as supporting my business at all and
advocating against it. The Ninth Circuit in Cordova v. Baca
(346 F.3d 924) treated a defective waiver as prejudicial
per-se when it said "failing to provide an adequate warning
as to the dangers...and that the record was inadequate to
demonstrate that the individual was sufficiently informed
of the dangers...to make an intelligent and knowing waiver.
The state appellate court applied harmless error review and
concluded that the outcome would have been no different if
counsel had provided assistance...right...had not been eff-
ectively waived, a harmless error analysis could not apply"

.

## Cumulative Error

With so many errors of all magnitudes that by themselv-

es justify vacating my conviction saying that the combination
of errors justifies overturning it is a no brainer. In O'Neal
v. McAninch (513 U.S. at 435-36) the Supreme Court said
"cumulative error doctrine allows a petitioner to present a
stand alone claim asserting the cumulative effect of errors
at trial that so undermined the verdict as to constitute a
denial of his constitutional right to due process". In the
Ninth Circuit this applies when an outcome is rendered "fun-
damentally unfair", Parle v. Runels (505 F.3d 922). Please
vacate my conviction due to cumulative error and consider
that "when a federal habeas corpus court finds a constituti-
nal.::error and is in grave doubt as to whether the error
had a 'substantial' and injurous effect...' the error is not
harmless and the petitioner must win", O'Neal.


## Rule 59(e) and Rule 15 Relief


Suggested "procedure under which habeas corpus petition-
er (1) pleads claims that she reasonably believes to be sup-
ported by as yet undiscovered facts that can only be discov-
ered through investigative and discovery procedures that
become available after a federal petition is filed, then (2)
either amends in new facts or amends out claims in light of
the post-filing investigation and discovery). New claims may
become available because of retroactive changes in the law,
newly surfaced legal or factual theories, or the expansion
of state remedies. See Advisory Committee Notes to Rule 5 of
the Rules Governing Section 2254 Cases in the United States

District Courts ('1976 Adoption')(answer '"may reveal to the
petitioner's attorney grounds for release that the petition-
er did not know [about]"' '(quoting Developments in the Law,
supra note 1, at 1178)); Love v. Jones, 923 F.2d 816, 818 (
11th Cir. 1991)(amended petition filed after magistrate app-
ointed counsel for pro se petitioner); United States v. Wei-
ntraub, 871 F.2d 1257, 1259 (5th Cir. 1989)(amendment permi-
tted after discovery revealed new information)". "Cissell",
James Cissell, Federal Criminal Trials, 2016 Edition, 17.2 (
Matthew Bender).

After reading that I thought to myself that surely the
rules governing amendments in civil actions including 59(e)
and 15 (for which motions have already been filed) permit a
pro se litigant to present new information as he discovers
it. Certainly if it is timely by being made before judgment
or shortly afterwards. I also thought that surely parts of
Rules 59 and 15 would also support the grounds for which
relief is sought in this 52(b) motion as well as my earlier
Rule 59(e) and 15 motions.

Grounds for relief such as "amendment to conform pleadi-
ngs to evidence may be made 'at any time even in Supreme
Court'", Brandon v. Holt (469 U.S. 464), "even after judgme-
nt", Baker v. John Morrell and Co. (382 F.3d 816), or after
dismissal "it took considerable time before Woods' counsel
finally reshaped the complaint", Woods v. Indiana University
(996 F.2d 880). "When the new claim is based on the same

facts as the original pleading and only changes legal theory
", MAyle v. Felix (545 U.S. 644), or the litigant at least "
attempted to set forth" claims in original complaint "the
court should freely give a...pro se complaintant, leave to
amend", McClellon v. Lone Star Gas Co. (66 F.3d 98). In some
cases permitting amendments are mandatory. See Krupski v.
Costa Crociere SpA (560 U.S. 538) in which the Supreme Court
rejected the idea that "a plaintiff's dilatory conduct can
justify the denial of relation back...Rule plainly sets for-
th an exclusive list of requirements for relation back, and
the amending party's diligence is not among them. Moreover,
the Rule mandates relation back once the Rule's requirements
are satisfied; it does not leave the decision whether to
grant relation back to the district court's equitable discr-
etion." In the Ninth Circuit Rule 15(d) "is disigned to per-
mit expansion of the scope of existing litigation", Keith v.
Volpe (858 F.2d 467). "Leave is favored...the standard used
by courts in deciding to grant or deny leave to supplement
is the same standard used in deciding whether to grant or
deny leave to amend", Cissell.


Courts have a responsibility to treat filings made by
pro se litigants in the pro se litigant's favor "pro se
prisoner's letter, filed shortly before expiration of statu-
te of limitations and indicating intention to amend complai-
nt should have been broadly constru[ed] as amended complaint
in order to preserve jurisdiction", Pearson v. Gatto (933
F.2d 521). See also Reynoldson v. Shillinger (907 F.2d 124)

22

"liberal opportunity to amend section 1983 action should have been granted when error in pleading probably was result of pro se litigant's unfamiliarity with law" and in the Ninth Circuit Balistreri v. Pacifica Police Dep't (901 F.2d 696 ) "leave to amend is generous...district court abused its discretion by dismissing rather than giving plaintiff an opportunity to amend complaint".

## Certificate of Appealability

I discussed in my Rule 59(e) motion (p. 7, 9-10, 12, 13-14, 15) and Rule 15 motion (p. 5) the requirements for a COA . I believe that those requirements have been met in both of those motions, my original 2255, and this motion. I do not believe that any of the issues I have raised could not be debated by reasonable jurists. Please expand the COA to all aformentioned claims. If The Court denies this motion as a whole or in part please expand the COA to include the denial of this motion or any parts of it considered debatable by jurists or reason by The Court.

## Applicability of Rule 52(b)

Although Rule 59(e) motions are most typical in habeas corpus post-judgment proceedings, Rule 52(b) motions in situations such as this are permitted. See Carrigan v. Arvonio (871 F. Supp. 222) in which a late 52(b) motion in an ineffective counsel case was granted when lateness was due 

23

to factors beyond petitioner's control. My motion however
is timely because my Rule 59(e) and 15 motions were not
decided until 2/16/2016, so I didn't know what was coming
next whether it be a vacatur of the conviction or sentence,
an evidentiary hearing, response by The Government, or den-
ial by minute order. Other cases support this application
of 52(b) including **Browder v. Director, Dep't** of Correctio-
ns (434 U.S. 257) "Rule 52(b) and Rule 59 of Federal Rules
of Civil Procedure are applicable in habeas corpus proceed-
ings...habeas corpus statutes say nothing about the proper
method for obtaining correction of asserted errors after
judgment...a timely petition for rehearing [or reconsidera-
tion] tolls the running of the [appeal] period because it
operates to suspend the finality of the...Court's judgment"
and "time periods for motions under 52(b) and Rule 59(a)
and (e) are identical and motions are closely related, mov-
ant should not be prejudiced by erroneous Rule reference,
but should be granted whatever relief his motion shows him
to be entitled." United States Gypsum Co. v. Shiavo Bros.,
Inc. (668 F.2d 172).


If The Court believes that Rules 52(b), 59(e), and 15
do not permit this motion to be resolved in my favor then
perhaps my claims should be considered under Federal Rule
of Civil Procedure 60(b) ("Rule 60(b)") at this time. I
believe that Rule 60(b)(1), (2), and (6) are applicable to
my case if the court does not consider this motion timely
under Rules 52(b) or 59(e) due to the difference between

date of the Opinion and Order versus the date of the Rule 59(e) and 15 motions denial. I believe that the date of the denial is when the judgment became final because I could not do anything while waiting for that decision, but if The Court uses the date of the original judgment for tolling purposes then Rule 60(b) relief may be granted for (1) "mistake, inadvertence, surprise, or excusable neglect", (2) " newly discovered evidence", and (6) "any other reason that justifies relief". See the Advisory Committee Note that says "any Rule 60 ground for relief may also be raised in Civil Rule 59 motion", so the only difference is timing.

## Conclusion

This is an unusual case and "in unusual cases, the court may grant [habeas corpus] relief...without a hearing", Ake v. Oklahoma (470 U.S. 68), so please vacate my conviction and sentence. If not then please schedule an evidentiary hearing or at least expand the COA. Clearly my lawyers were ineffective. Under no circumstances is this motion to be treated as a second of successive 2255.

Respectfully Submitted,

_2/29/2016_

Cyrus Andrew Sullivan, Defendant, Pro Se