Tiffany A. Harris   OSB 02318
Attorney at Law
333 SW Taylor St., Suite 300
Portland, Oregon 97204
t. 503.782.4788   f. 503.217.5510
tiff@harrisdefense.com

Attorney for Cyrus Sullivan

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>CYRUS SULLIVAN.<br><br>　　　　　　　Defendant. | 3:13-CR-00064-HZ<br>3:14-CR-00190-HZ<br><br>OPPOSITION TO<br>GOVERNMENTS MOTION<br>FOR PROTECTIVE ORDER |

Defendant Cyrus Sullivan, by and through counsel, Tiffany A. Harris, submits the foregoing opposition to the Government's Motion for Protective Order.

**INTRODUCTION**

During conferral on the Government's proposed protective order, Mr. Sullivan agreed to receive a set of discovery materials with personally identifying information (PII) redacted. This arrangement would have prevented discovery documents containing PII from being disseminated within the Multnomah County Detention Center or elsewhere. The Government rejected this offer and instead advocates a far more stringent and intrusive form of order.

Because the defense has not yet reviewed the discovery, the objections set out below are general in nature. That said, the circumstances of this case, the need for prompt disclosures in advance of the May 16, 2017 hearing, and the interests at stake favor an approach that is narrowly tailored to address whatever "good cause" showing the Government makes.

On page 2 of its motion, the Government claims that the proposed order is "necessary for the reason that defendant's possession of material distributed as discovery that contains PII that may place those persons and others at risk of injury or otherwise jeopardize their safety; as well as be used by defendant to continue to harass officials charged with his custody." So, at this point, the Government's good cause showing exists largely in theory, in the form of a sentence-long place-holder, lacking substantiation or specificity.

Federal courts adopting "blanket" protective orders as draconian as the one pressed here were faced with grave and credible threats of harm to informants and defendants charged with murder or reported to be part of syndicates and street gangs engaged in racketeering. The heavy burdens and broad prohibitions sought in those orders were balanced against unique concerns and Government interests. Because those extraordinary concerns and unique interests do not exist here, the Court should either reject the proposed protective order out of hand or fashion an alternative order that is far more narrowly tailored.

**SUMMARY OF ARGUMENT**

The defense objects to the proposed protective order, which permits defense counsel to know the identifying information of fact witnesses but requires her to keep it a secret from her client, Mr. Sullivan. It forces defense counsel to, not only withhold potentially relevant and important evidence from her client, but also to proctor his page-by-page review of the discovery on a computer screen at the jail, to ensure that he is not engaged in "copy[ing] or transcrib[ing] the content of the materials," but appropriately "tak[ing] notes in preparation for his defense."

The Government's proposed protective order provides, in relevant part:

> Defendant shall be permitted to review [redacted discovery] materials electronically, provided that the method of viewing does not permit the removal, transfer, copying, printing or redistribution of the materials provided. Defendant shall not be permitted to copy or transcribe the content of the materials, but shall be permitted to otherwise take notes in preparation for his defense.

> Defense counsel of record shall...be provided a full, un-redacted copy of discovery. Counsel, and those working or employed by or agents of counsel shall not be permitted to display or share any portion of the un-redacted materials with defendant, or otherwise

disclose the contents of redaction to defendant.  Counsel shall be permitted to redistribute the discovery materials to successive counsel, experts, investigators, or such other consultants as necessary to conduct the defense in this matter.

Mr. Sullivan has been actively involved in case planning and preparation and will continue to review evidence with his defense team.  The proposed order unnecessarily inserts the Government into the attorney-client relationship by requiring counsel to police Mr. Sullivan's mode of document review and discussion of witnesses with his defense team. The proposed protective order creates the potential for needless conflicts within the attorney-client relationship, where counsel's fiduciary duty of loyalty remains paramount.  *See,* Charles W. Wolfram, Modern Legal Ethics, 146 (1986) ("Whatever may be the models that obtain in other legal cultures, the client-lawyer relationship in the United States is founded on the lawyer's virtually total loyalty to the client and the client's interests.")

In the event of a suspected violation of the protective order—even one found to be without merit—the attorney-client privilege could be jeopardized.  Investigating such an allegation could require a searching inquiry into who said what to whom—the very communications at the heart of the attorney-client privilege.

Compared to trial, revocation hearings proceed on a more accelerated timeline.  The hearing in these matters is currently set for May 16, 2017, less than three weeks away.  Between now and the date of the hearing, the defense will have to divert resources away from briefing and essential preparation in favor of stationing defense team members at the jail, to monitor Mr. Sullivan's review of the evidence against him.  Even if the discovery produced by the Government turns out be fairly limited in volume, imposing a client-supervision requirement at this juncture exacts too heavy a burden to serve Government interests that are speculative and--to date--have not been justified with the requisite showing of "good cause" under Fed. R. Crim. P. 16(d)(1).

Finally, the terms of the proposed protective order rest on a curious inconsistency.  The Government and Probation Department appear to believe that Mr. Sullivan is capable of finding home addresses of public employees on his own initiative, based on names, alone.  Assuming

that's true, then the proposed protective order does nothing to counteract that perceived harm. It simply saddles the defense team with an obligation to supervise Mr. Sullivan's review of redacted records in the jail.

### RULE 16 STANDARDS

The language of Rule 16 of the Federal Rules of Criminal Procedure creates a presumption that it is the *defendant* who is assured the right to inspect materials requested in discovery. Similarly, Rule 16(1)(A) and (B) provide that the Government "must disclose to the *defendant*" the oral and written statements contemplated by those subsections. (Emphasis added.) Cutting the defendant out of the discovery loop is not the norm; it is a deviation that must be accounted for and justified by a balancing of interests and showing of good cause. *Accord*, *United States v. Fine*, 413 F. Supp. 740, 744 (W.D. Wisc. 1976) ("In order for the court to grant a protective order, the Government must indicate what legitimate government interests would be impaired or suggest, in what way, the rights of third parties would be damaged, were a protective order not entered in this action.")

Under Fed. R. Crim. P 16(d)(1), a District Court "may, *for good cause*, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." (Emphasis Added.) "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure." *United States v. Wecht*, 484 F3d 194 (3rd Cir. 2007). The "injury" must be established with specific evidence; "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy" the relevant standard. *Id*. In *Wecht*, the Court drew from precedent construing the analogous "good cause" standard in Fed. R. Civ. P. 26 (c). Ninth Circuit cases construing Fed. R. Civ. P. 26(c) have reached similar conclusions to the ones relied upon in *Wecht*. *See, e.g., Foltz v. State Farm Ins. Co.*, 331 F3d 1122 (9th Cir. 2003) ("A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted.")

The question in this case is what sort of "good cause" would justify the breadth of the Government's proposed protective order and its level of intrusion into Mr. Sullivan's right to prepare his defense?   In United *States v. Barbeito*, Docket 2:09-cr-0022, 2009 U.S. Dist. LEXIS 102688 (S.D. W. Va. 2009) over 50 members of the Pagans Motorcycle Club were indicted on various charges, including conspiracy to commit murder. The District Court found that "the risks presented to informants in this case are more than theoretical… There appear to be allegations and evidence in the record already of efforts to harm informants by at least some of the defendants in this case." *Barbeito*, 2009 U.S. Dist. 102688 at p. 9.  Even in that case, with its murder charges and record evidence of plans to harm informants, the protective order adopted by the Court was not a "blanket one"—it specified which documents were subject to restricted access (those containing or referencing the identity of confidential informants). *Id.,* p. 10.  The defendants were permitted to retain un-restricted documents in their possession.  Finally, the order adopted by the District Court did not contain any sort of "Attorney Eyes Only" or similar provision such as the one sought here.

Similarly, in *United States v. Garcia*, the Southern District of New York limited the reach of a protective order aimed at preventing harm to government witnesses identified in Jencks Act material.  406 F. Supp. 2d 304 (S.D. Ny 2005).  There, the defendants were charged with multiple counts of murder in furtherance of a racketeering enterprise, among other crimes.  The Court observed, "in this case, defendants are accused of repeated acts of violence, including murder, allegedly committed to further a narcotics distribution enterprise…In such cases, witness intimidation is always to be feared."  Garcia, 406 F. Supp. 2d at 307.  Under those circumstances, the District Court decided it was appropriate to limit defendants' personal access to Jencks Act Materials, requiring them to review them in the presence of defense counsel. However, the court tethered the restrictions on discovery to the Court's finding of need:

> In one respect, however, the Government's request is over broad. The proposed order precludes the defendants from taking *any* [Jencks] material into the prisons except under the direct supervision of their attorneys. As noted, the rationale for

this restraint is to protect against the intimidation of lay witnesses. Not all such material presents such danger. There is, for example, no need to grant such protection to statements that reveal only the testimony and activities of law enforcement officers. Permitting the defendants to review such material poses no danger, and promotes the efficient preparation defendants seek. Accordingly, the third branch of the proposed order will be modified to relate only to such [Jencks] material as reveals the identities or expected testimony of witnesses not employed by the Government.

*Id.*  Additionally, the *Garcia* Court carefully balanced the need for relief under rule 16(d)(1) against the need for defense counsel and defendants to review Jencks material under time pressure, without needless obstacles, noting,

That defendants have no *right* to extended independent review of [Jencks] materials in the privacy of their cells does not mean that the Court should ordinarily preclude such review. When the Government chooses, for entirely appropriate reasons, to provide early, generous and convenient disclosure of such materials, the defense is entitled to make its own legitimate use of the materials in preparation for trial, and it would be malpractice for counsel not to share the materials with their clients and seek the clients' input in evaluating the meaning and credibility of the witnesses' statements thus revealed.

**CONCLUSION**

Often, the defendant, alone, possess information that may be critical in refuting the Government's evidence, or in discrediting expected prosecution witnesses.  It is axiomatic that defense counsel should be free to communicate candidly with her client, and to discuss the anticipated testimony against him.  This collaborative aspect of trial and other preparations is a primary reason why the defendant's statutory right to discovery is enunciated as a *personal* one that flows to him directly, independent of his attorney.

Even when "good cause" exists to place some limitation on the manner and extent of discovery, District Courts must weigh those limits carefully.  As the statute and the case law make clear, interference with a defendant's independent and meaningful review of discovery material is not the norm.  Even in cases where defendants faced charges of murder and the District Court found that grave risks to witness safety existed, protective orders were not issued

in "blanket" form; their prohibitions were narrowly tailored; and the Court did not resort to "Attorney Eyes Only"-type provisions.

With those principles in mind, Mr. Sullivan asks this Court to reject the proposed protective order as overly broad, unnecessarily burdensome and more intrusive than is justified by any showing of good cause in this case. Mr. Sullivan is willing to accept discovery material in a form that redacts PII, upon a showing of good cause.

DATED this 28th day of April, 2017.

Respectfully submitted,

/S/      Tiffany Harris
Tiffany A. Harris
Attorney for Defendant Cyrus Sullivan